This is case number 4-14-0401, Thomas Nuzzi et al. v. The Board of Trustees of the Teachers' Retirement System. Attorney Breen is here on behalf of the appellant. Attorney Lowenstein is here on behalf of the FOE. Mr. Breen, are you ready to proceed? Yes, Your Honor. All right, you may do so. Your Honors, thank you for having us. Counsel. This is a case about statutory interpretation. And what we're here to do is ask Your Honors to follow the language set forth in Section 149.2, the Disability Retirement Annuity Statute. Because when you boil it down, and we'll talk about the time frame in a minute, but when you boil down how this came to be, here's where we're at right now. We are seeking reinstatement of the Disability Retirement Annuity that the Nuzzis used to receive. The eligibility rules for the Disability Retirement Annuity are set forth in Section 149.6, which is referred that way from 149.2c. Under 149.6, the Nuzzis were and remain eligible to receive the Disability Retirement Annuity that TRS terminated. TRS terminated this annuity under the eligibility rules of a different statute, one that does not apply to the Disability Retirement Annuity. They used eligibility rules that apply to a different benefit. The Disability Benefit, which is Section 149. So to kind of set forth the time frame of the Nuzzis and how we got to where we're at in this case. It all started when the Nuzzis were rendered disabled. There was emotional distress and post-traumatic syndrome related to their teaching. This is undisputed. It's been undisputed at every stage of this case and remains undisputed today before Your Honors. They were rendered and remain disabled. The next important thing that happened as far as this case is concerned is they became eligible for a disability benefit. Now this is that first benefit, different than the one they were terminated from. That's under Section 149. Tom Nuzzi became eligible for that benefit on July 1, 2008. Debbie Nuzzi became eligible for that benefit on February 16, 2008. The next important thing that happens for the purpose of this case is that the disability benefit ceases. For Debbie Nuzzi, her disability benefit ceased on June 11, 2009. I'm sorry, for Tom, it was June 11, 2009. And for Debbie, it was February 12, 2009. Why was that? Is it for a limited period of time? Yeah, the disability benefit. And actually, the next thing that happens the following day, they elect to go into the disability retirement annuity. I don't know whether that was a choice that was 100% theirs or whether it just made sense. But as I understand, that's how the disability and the benefit scheme is supposed to work. The disability benefit is a benefit for a temporary period of time, and the disability retirement annuity is for a lengthier period of time, for a period of retirement. So I can't say that it was 100% their decision, but it's likely that it was close to the case. Do they qualify now for regular retirement benefit? They do not. And is that because of their age or length of service or combination? I believe it's a combination of both. And so are they going to be eligible at some point in time as they age out for a retirement benefit? Do you know that? I don't believe so, but I can't say that with 100% certainty. So the next thing that happens is they become eligible for the disability retirement annuity. June 12, 2009 for Tom, February 13, 2009 for Debbie. And the next important thing that happens is TRS terminates that disability retirement annuity. It terminated Tom's disability retirement annuity on March 31, 2010, retroactive to January 28, 2009. It terminated Debbie's retirement annuity, retroactive to February 2. On May 24, 2010, retroactive February 2, 2009. So are those dates where they were actually receiving the disability benefits? The retroactive date? The retroactive dates, yes. They were receiving the disability, I'm sorry, they were not receiving the disability retirement annuity. No, I mean, right, they were receiving just the disability benefits versus the disability retirement annuity. Yes. Okay. And they rendered that decision under Section 142, which applies to that disability benefit. But they said under Section 149, you're ineligible for benefits that you're receiving under Section 149.2. Disability benefit versus disability retirement annuity. But it was retroactive to when they were receiving benefits under 149, correct? Yes. That wouldn't be a problem, but they used it, if they were going back and saying, hey, you know what, you weren't eligible at that time to receive benefits for the disability benefit, we'd have a different case. When they're going back and saying, you're not eligible, we're making this retroactive to this date to terminate your disability retirement annuity, even though you were receiving the disability retirement annuity at that time, and the rules under which we're rendering this decision don't apply to you now because you are receiving the disability retirement annuity. So in the calculation for what they owed based on receiving the benefits when it's been determined they weren't eligible for them, did it include any portion of their occupational disability benefits that they received, or was it all strictly disability retirement annuity benefits? They rendered them ineligible for everything from the respective dates of January 28, 2009, and February 2, 2009 forward. So, yes, they would include everything between 1-2809 through 6-1109 for Tom, and only a 10-day period for Debbie that they were rendered ineligible for that disability benefit. So it's a combination of the two types that they had been receiving? Yes. Based on the evidence that TRS found, what should they have done? They should have let the benefit continue. What about the earlier benefit? They may have an argument for that, but that's not the argument they're making here in court. They terminated everything, and what's important to the Nazis isn't the temporary benefit. What's important to the Nazis is this retirement benefit. That's what they're seeking to live on, and that's what the rug was pulled out. That's the rug that TRS pulled out from under them when they should have. What about the language in the statute, though, that says they have a right to receive the benefit unless they're teaching in a public or private school, college, or university? Which statute is that? Okay, 149.2a, subsection a of section 16-149.2. Well, importantly, section 149.2a is not a gateway to eligibility. This is not, hey, you're teaching, so you're an eligible. The statute says that it would only render that benefit inappropriate for a period of time during which they're teaching, which we're not conceding that they were teaching. But it is not a gateway to eligibility for the disability retirement annuity. At best, it's a spense payment only for that short period of time during which they would be considered teaching. The important eligibility requirement for the purpose of that disability retirement annuity is that that disability condition continues. And there's language in the statute that talks about the documentation that's required to continue to render somebody eligible for that. And that is the important eligibility requirement for that disability retirement annuity. And that is, as we talked about, indisputed on the law. And moreover, and it gets to a larger point with respect to the construction of these statutes, is that on the one hand, it says, it talks about teaching there, but more importantly, that statute refers to section 149.6 that indicates that the benefit shall continue unless any one of four enumerated conditions occur. The only arguable condition that we've got here is that they were gainfully employed. The Nazis earned a combined salary for $2,200, which is well under the $10,000 annual per person salary that one would have to earn in order to render themselves gainfully employed for purposes of discontinuing the statute under 149, under one of those 149.6 exceptions. And it's that 149.6 language that clearly sets forth the only circumstances when that benefit can terminate. And certainly there is language among these statutes that can be construed as being inconsistent with itself. And when that happens, it is well established that those statutes have got to be construed in favor of the pensioner. The pensioner, the people that are trying to follow the rules, and the people who aren't lawyers, who are trying to figure this out, who are either trying to go about their lives, in the Nazis' case, trying to get better, trying to get past the issues that rendered them unable to teach, that pulled them out of the classrooms that they enjoyed being in. And you're looking at, you've got booklets, you've got statutes, you're talking to your counselor and caseworker at school, and you're trying to figure out, hey, what can I do? How can I go on with life? How can I preserve that benefit that's so important to me, because it's my lifeblood, it's the income, the money that I need to survive, but how can I do something productive? How can I help people out in a way that I know how? And they're looking at everything, and this is the best way they can figure out. The reason those courts hold that they've got to be in favor of the pensioner is because, like we talked about, the pensioner, they're not lawyers. You've got to help people out who are doing the best they can to follow the rules, particularly when you've got some different rules, or rules that can be interpreted differently. And that's what the Nazis did. They weren't looking for ways to game the system. They're looking for, hey, what can I do, and how can I follow the rules? And that is well-established many times over by our Supreme Court, that there's an obligation to construe these statutes in favor of the pensioner when there's any difference in terms of statutory interpretation. Well, what pamphlet or statute would have suggested to them that was okay to teach? The fact that they weren't earning anywhere close to $10,000 a year. They also weren't teaching. They weren't trying to teach. They were trying to do what they could with the experience that they had and not be in violation of the law, of the rules set forth. They weren't looking to get back into a classroom. They were looking to say, hey, what can we do to be productive and not violate this? And when you put everything together from their perspective, it's, hey, this is okay. Yeah, we're working with the school, but we're not teaching students anything. We're not meeting with students. We're earning very, very little money. And the only most crystal clear language of any of those statutes is the language in 146 that says if you're not gainfully employed, your benefits shall continue. And it's, hey, you know, all this together, and we're being told that maybe it's okay, and our doctors are telling us, hey, you know, it's a good idea. It'll help you get healthier. That's what's telling them it's okay to do what they were doing. And it's TRS who's hanging their hat on calling them teachers in that respect. It might be the people who were receiving instruction or whatever it was called would think that they were teachers as well. They were working with an online class. And that's not teaching? In certain circumstances, that can be teaching. I think that depends considerably on the nature of that online class. If you're doing videos and you're maybe Skyping with students and you're giving lectures, but if all you're doing is logging in and seeing that certain things are submitted and that certain things are done and administering the class in a situation that might be more analogous to what a secretary would do, then no, I don't think that's teaching. And that's not to say that students enrolled in a curriculum that they're affiliated with aren't being taught and aren't learning anything, but a lot of the way these online courses are set up, it's self-driven learning, and the material's there. The Nazis didn't generate this material. The Nazis are seeing to it that people are doing what they're supposed to do. And that's why. And yet, certainly they toe the line there, but they were careful not to cross it because they thought what they were doing was safe and they wanted to take advantage of their experience and do what they could to get better but preserve their right to pension. I'd also like to address, and I know my opposing counsel's brief talks about the opposite of what we just said, and that's that courts are supposed to give deference to an agency when that agency renders a decision. And there's an important distinction that I'd like to bring up. And, you know, first of all, I think it's clear, and case law is more compelling. You've got decades of Supreme Court case law talking about how you've got to benefit pensioners. But there is an important, a close but important distinction to when courts will give deference to an agency, an agency like TRS in this case. And, you know, you've got cases like Abramson where the court, where a gentleman had filed suit related to a medical license not being granted to him. And the court looked to the association, the Department of Professional and Financial Regulation, with deference to say, hey, why didn't you award this guy a medical license? And they're making a judgment call in that case. Similarly, there's another case they're relying on McGregor. And they're looking to a court of McGregor's about what is and isn't a taxable compensation, a taxable benefit, and they're saying, hey, what is this benefit? What's the nature of this benefit? What's it supposed to be? And, you know, it is appropriate in certain circumstances when it's part and parcel to what that agency does, and there's a judgment call to be made when you're making nuanced calls of should somebody or shouldn't they have a medical license? Is this a benefit that is worthy of financial gain for the purposes of taxability? Is that what you guys meant by this? When there's nuance there, when there's a judgment call to be made, and the agency is full of experts who are close to that judgment call, then it makes sense to look to the agency. For instance, in this case, it makes sense to look to the agency to say, hey, you guys are closer to this. You're the ones that make the call of whether are the Nazis disabled or aren't they for the purpose of teaching? A lot of what happened to them happened in the classroom, and they're going to have to work in a classroom. This is something that makes sense for the court to look to the agency for a determination. But it's not the agency's job to interpret the statute. The agency wrote that statute or certainly had a part in it, and it's the court's job to interpret the language of that statute and interpret it for what it means. And at the end of the day, when we boil down the applicable statute here and the applicable language that the Nazis had and tried to abide by, there's no dispute that they were and remain eligible for that disability retirement annuity, at least with respect to their disability. It was terminated by TRS, but the fact of the matter is, under Section 149.6, that benefit shall continue unless any of those enumerated conditions are met. That's the most crystal clear language that you'll find in anything contained in Section 149.2, and we ask that your honors follow that language and reinstate the Nazis' eligibility for their 149.2 disability retirement annuity. And with that, I'll sit down unless there are any more questions. Thank you, counsel. You'll have another chance on referral. Thank you. Mr. Longstein. Thank you. Please support, counsel. My name is Ralph Longstein, and I am here on behalf of the Illinois Teachers Retirement System. The facts in this case, as counsel related, are pretty simple and straightforward. The Nazis both applied for and were granted non-occupational disability benefits pursuant to Section 16-149 of the TRS pension statute. They then assumed a teaching position in a private university out at Nazarene, and that was in the winter of 2009. While they were receiving the non-occupational disability benefits from teaching out at Nazarene, they switched to a disability retirement program, and they continued to teach out at Nazarene both in the winter of 2009 and continuing through the fall and early winter of 2009. When the Teachers Retirement System became aware of the fact that they were employed in a teaching capacity out at Nazarene, they discontinued their disability retirement annuity, which, of course, was what they were receiving at the present time. Now, to answer your question earlier, that also affected the few days when they were receiving the non-occupational disability benefits, which they had been receiving while they were also teaching out at Nazarene. It was not entirely clear to me, in reading the initial brief by opposing counsel, whether or not they were contesting the issue of whether or not they were actually teaching. So I addressed that in the opening section of our brief. It appeared to me in their reply brief that they acknowledged that they were not contesting that they were in fact teaching, but it really doesn't matter because I believe that the facts are not against the manifest point of the evidence with regard to our finding that they were employed in a teaching capacity. Let me ask you a question. 149.6 makes reference to the ability to maybe earn something while you're on this disability. Would there have been a mechanism by which this could have been approved? 149.6 really doesn't apply here. Doesn't apply at all. It doesn't apply here, and the reason is pretty simple and straightforward. It doesn't apply because they had not been receiving the disability benefits for a year and they were not employed in either a position covered by Section 16 or Section 15 of the pension code. They were employed in a private university. So for those reasons, the limited employment exception doesn't apply to that. So in another case, if you were receiving these disability benefits for a year and either because of some change or an opportunity presenting itself, you could have gone back to work for a public school on a limited basis? Yes. And then there would be some kind of a cap on how much you could earn. Exactly. There is a limited employment exception, as you said, in 16-149.6, which allows somebody who has been on disability for a year and goes back to work in either a public school covered by the downstate retirement system or in a state university to earn some limited amounts of money, and those exceptions are laid out in that statute. But because of the fact they didn't meet the qualifications, that doesn't apply here. So do you have to jump through some hoops to get approved to do that? No, I think that you just have to meet the eligibility requirements there, and then there's limitations on what you can earn. To my knowledge, you don't have to go back to TRS and ask that you get some pre-approval. But that's not what the nuisance did. They went to work in a teaching capacity at a private university and contrary to what the opposing counsel is saying to the court, I don't think the language here is particularly ambiguous or difficult to apply. We look at two different statutes here. We look at 16-149, subsection A. We look at 16-149.2, subsection A. And both of those statutes, although the language is slightly different, say that disability benefits are not payable to somebody who is employed in a teaching capacity. And that language disqualifies them from receiving the disability benefits, whether it's non-occupational or whether it's a disability retirement annuity, because they were employed in a teaching capacity. Let me ask you this question. Is the disability retirement annuity permanently lost, or is it lost only during the period that you're actually teaching? You have to re-qualify for it. Once you go back into a teaching position, then you have to re-qualify that by going back to work and meeting the qualifications. What tells us that? Is there a provision in the statute that says that? Well, that, I believe, is the appropriate interpretation of that statute. That's our position. That's what the statute requires. Because 149-2A says a disability retirement annuity shall not be paid during any period for which the member is employed. So, in other words, if you're in that retirement annuity section as opposed to the disability benefit section, it looks to me like maybe that language means there's a suspension of the benefits during that period of time rather than a termination. It's our position that they then have to re-qualify once they go back into teaching. And the reason, really, is intuitively pretty clear. The disability statutes are set up to benefit people who are unable to teach. And that's why, if they're able to teach, other than this limited employment exception, which you brought up, they become disqualified from receiving those benefits. Have the Nazis reapplied? Do you know? Not to my knowledge. I mean, there's nothing in the record indicating that they did, in fact, reapply. The ambiguity argument which counsel is making is primarily relying upon subsection C of 16-149. And subsection C of 16-149 states some circumstances under which the benefits are terminated. The problem with his argument in saying there's an ambiguity is that the clear language in subsection A of both 16-149 and 16-149.2 makes it very clear that you are not entitled to receive the benefits if you are employed in a teaching capacity. And so you never really reach subsection C. The second argument that he makes has to do with this gainful employment language. It's our position, and I think if you read the statutes as a whole, which I know you will, that the gainful employment basis for terminating benefits has to do with non-teaching employment. Because otherwise it would be inconsistent with subsection A, which makes clear that regardless, if you're employed in a teaching capacity, you're not eligible for these benefits. With, again, the exception of 16-149.6, which we've already discussed, which doesn't apply in this case. So the gainful employment disqualifier really doesn't come into play here at all. But even if we assume, if you disregard everything else that I've said up to this point, and all the arguments we've made up to this point in our brief, at the very latest, the noses became disqualified pursuant to section 16-149.2d when they went back into teaching. Let me just stop you right there. So they became disqualified from a disability benefit at that point in time, and therefore they should never have qualified for the retirement annuity? No, no. They became eligible to receive non-occupational disability benefits under 16-149. We're not contesting that. They lost the right to receive either a non-occupational disability benefit or a disability retirement annuity once they became employed in a teaching capacity. We didn't find out about this until some time later, and that's why they were notified some time later about the disqualification. If we'd known when they were first employed, the first day that they were employed in the teaching capacity at Auburn and Nazarene, we would have immediately terminated it, but we weren't aware of it until some time later. All I'm saying is that under section 16-149.2d, which I think they acknowledge at page 13 of their opening brief, at the very latest they were disqualified at that point from their disability retirement annuity. Let me state this another way in terms of the chronology without using dates. During the time that they transitioned from the disability benefit to the annuity benefit, their teaching overlapped that transition. That is correct. And that's why really this whole argument that opposing counsel makes, well, they were terminated on the wrong statute, really doesn't apply here, because at the time that we found out about it, they were receiving a disability retirement annuity. However, as you said before in your question to me or your comment to me, they were receiving non-occupational disability retirements when they began to teach. They continued to teach after they began to receive their disability retirement annuity. They were disqualified pursuant to subsection A under both statutes for receiving it once we found out and notified them that they were not entitled to and received those benefits. So if you have any further questions, I'd be more than happy to answer them. Otherwise, I don't have anything further to say. I don't see anything, Mr. Walmsley. Thank you. Any rebuttal, Mr. Breen? I'd just like to clarify a couple of things stated by Mr. Lowenstein. Again, I think it is not within the convenience and purview of TRS to be able to rope the statutes together and read them as a whole conveniently as so they choose. Any references to teaching under section 149 can't just be pulled in to get to the decision they want to receive when we're talking about benefits under section 149.2. And at best, any issue in the language of section 149.2 is clear that in the worst case scenario, any suspension of those benefits is just that. There's a suspension and it's temporary. And there's no reason and there's no language or instruction that one would need to requalify for that benefit in the statute. It doesn't talk about that. And really, that's what we're here to do right now. We're here to go back and have this court requalify the NAZIs for the benefits, for the disability benefits that they were and remain entitled to. And we hope that's what you'll do. Unless there are any other questions, that's all I've got. I don't see any. Thank you, Mr. Breen. We'll take this matter under advisement and be in recess. Thank you.